UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------x

COMMODITY FUTURES TRADING COMMISSION,

               Plaintiff,

        v.

MICHELE SPAGNUOLO,

             Defendant.

--------------------------------------------------------------------x

Civil Action
No. 26 Civ. 4419 (MKV)

# THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO INTERVENE AND FOR A COMPLETE STAY

JAMES M. MCDONALD
United States Attorney
Southern District of New York

Thomas S. Burnett
Ryan B. Finkel
Allison Nichols
Assistant United States Attorneys

    *- Of Counsel*

## PRELIMINARY STATEMENT

The United States of America, by and through the United States Attorney for the Southern District of New York ("the Government"), respectfully submits this memorandum in support of its application (i) to intervene in the above-captioned case, pursuant to Rule 24 of the Federal Rules of Civil Procedure, and (ii) for a complete stay of this civil action (the "Civil Action") until the conclusion of the parallel criminal case, *United States v. Michele Spagnuolo*, No. 26 Cr. 278 (AT) (the "Criminal Case").

The Criminal Case arises from the identical set of facts and circumstances as the Civil Action. As a result, a full stay is appropriate because many of the legal issues will necessarily be litigated in the Criminal Case, making simultaneous litigation in the Civil Action duplicative, and because any exchange of discovery would be asymmetrical and would merely allow the defendant to circumvent the criminal discovery rules and improperly tailor his defenses in the Criminal Case. In similar situations, courts in this Circuit and others have often entered a stay of parallel civil actions when there is a related criminal prosecution with overlapping defendants and facts, even over a defendant's objection. *See, e.g.*, *S.E.C. v. Chirico*, 25 Civ. 6715 (ER), 2026 WL 972449, at *7 (S.D.N.Y. Apr. 10, 2026) (granting full stay of civil action pending resolution of parallel criminal case over defendant's objection); *SEC v. Hwang*, No. 22 Civ. 3402 (JPO), 2023 WL 6124041, at *18-19 (S.D.N.Y. Sept. 19, 2023) (granting Government's motion for a full stay of discovery over objection of defendants); *SEC v. Javice*, No. 23 Civ. 2795 (LJL), 2023 WL 4073797, at *4-8 (S.D.N.Y. June 20, 2023) (granting full stay of discovery over defendant's objection and alternative suggestion of partial stay of discovery); *CFTC v. Alexandre*, No. 22 Civ. 3822 (VEC), Dkt. No. 160 (S.D.N.Y. Sept. 2, 2022) (granting full stay over defendant's objection and proposal to permit depositions to proceed); *SEC v. Milton*, No. 21 Civ. 6445 (AKH), Dkt. No. 40 (S.D.N.Y. Aug. 8, 2022) (granting Government's motion for a full stay over defendant's

objection); *SEC v. Sarshar*, No. 20 Civ. 6865 (GBD), Dkt. No. 35 (S.D.N.Y. June 3, 2021) (same); *SEC v. Carroll,* No. 19 Civ. 7199 (AT), 2020 WL 1272287, at *2-5 (S.D.N.Y. Mar. 17, 2020) (granting, over defendants' opposition, a full stay).

For the reasons that follow, the Government respectfully requests that this Court enter an order staying this matter in its entirety until the conclusion of the Criminal Case against the defendant. The Government understands that the CFTC consents to a stay, and the defendant does not take a position on the motion for a stay.

## BACKGROUND

This case, and the parallel Criminal Case, arise out of allegations that defendant Michele Spagnuolo misappropriated confidential and valuable nonpublic information from Google and used that information to purchase event contracts on a series of Google-related markets on Polymarket. On June 25, 2026, the Indictment was unsealed, which charges Spagnuolo in three counts: Count One charges him with commodities fraud, in violation of Title 7, United States Code, Sections 9(1) and 13(a)(5), and Title 17, Code of Federal Regulations, Section 180.1; Count Two charges him with wire fraud in violation of Title 18, United States Code, Section 1343; and Count Three charges him with money laundering, in violation of Title 18, United States Code, Section 1956.

Both the Criminal Case and the Civil Action concern the same facts and circumstances. Spagnuolo was a software engineer at Google. (Ind. ¶ 1; Compl. ¶ 2). Google's core business is search, and the substantial majority of its revenue comes from charging advertisers who advertise on its search platform. Google's search data—including data reflecting which terms, topics, people, and events trend on its platform—is commercially valuable proprietary information central to that business. It is the product of Google's significant ongoing investment in technology,

infrastructure, and personnel. And it directly informs Google's advertising products, marketing strategy, and relationships with advertisers.    (Ind. ¶ 2; *see* Compl. ¶ 29).

Each year, Google invests substantial financial and personnel resources in a coordinated marketing campaign called "Year in Search," in which it publicly releases curated data reflecting the top trending searches from that year. The campaign involves driving user interest and engagement by building momentum before announcing the top searches of the year and making a "splash" with the announcement. Because the impact of the campaign depends on the element of surprise and the coordinated nature of its public reveal, maintaining the confidentiality of the "Year in Search" data is important to Google's commercial objectives. Premature disclosure could reduce or eliminate anticipated user engagement, undercut media interest, and diminish advertiser revenue tied to the launch. To avoid such disclosure, Google maintains strict confidentiality over its "Year in Search" results until the moment of public release. (Ind. ¶¶ 2-3; *see* Compl.¶ 29).

As a Google engineer, Spagnuolo had access to Google's internal data systems, including an internal software tool that gave him access to confidential, nonpublic "Year in Search" data. The software tool bore a banner reading "Google Confidential" in red text. The defendant also knew that Google strictly limited use of that data and certified his understanding in an agreement to comply with Google's confidentiality policies. (Ind. ¶ 4; *see* Compl. ¶¶ 32-37).

While he was a Google employee, Spagnuolo was a user of Polymarket, a prediction marketplace headquartered and operated in Manhattan, New York. Polymarket facilitates the trading of binary event contracts, or "shares," that allow users to wager on the outcome of future events. Each market is framed as a Yes/No question such as "Will X happen?" and pairs a YES share with a NO share. At resolution, the share on the correct side pays $1.00; the other pays $0.00.

Shares trade between $0.00 and $1.00, and the price reflects the market's real-time assessment of the probability that an event will occur. (Ind. ¶ 5; *see* Compl. ¶¶ 10-15, 20-27).

In October 2025, Polymarket began offering binary event contracts related to Google's anticipated "Year in Search" results. Those contracts allowed Polymarket users to place trades based on their view of whether certain individuals would, or would not, be the most "searched" individuals on Google for 2025. (Ind. ¶ 5; Compl. ¶ 28).

Using a Polymarket account that was not associated with his true name or other personal identifiers, but instead with the moniker "AlphaRaccoon," Spagnuolo traded Polymarket event contracts related to "Year in Search" on the basis of confidential information he obtained through his employment at Google. The defendant made substantial purchases of contracts on who would, and who would not, be announced as the top trending searched persons on Google. In all, between October 15 and December 4, 2025, he risked approximately $2,754,092 on approximately 23 Google "Year in Search"-related events. (Ind. ¶ 6; *see* Compl. ¶¶ 38-44).

Google officially announced its "Year in Search" results for 2025 on or about December 4, 2025. Soon after it did so, Spagnuolo made a profit of approximately $1.2 million in cryptocurrency on his "Year in Search"-related trades. He transferred his profits to a cryptocurrency wallet and, between December 10, 2025 and April 22, 2026, made at least 14 transactions with the gains from his unlawful trades. Those transactions included at least two cryptocurrency swaps designed to conceal the unlawful source of the funds by using a cryptocurrency transfer service that holds itself out as a service that adds privacy protection to cryptocurrency transactions through the removal of wallet addresses from the blockchain, among other things. In early December 2025, after users of Discord and X began publicly speculating that "AlphaRaccoon" was a Google insider, Spagnuolo changed the name of his Polymarket account

from "AlphaRaccoon" to a series of numbers and letters, further obscuring his connection to the account. (Ind. ¶¶ 7-8; *see* Compl. ¶¶ 44-48).

## ARGUMENT

The Government's request to intervene and to stay this matter in its entirety should be granted. *First*, permitting the Civil Action to proceed would allow Spagnuolo to make an end-run around the constraints imposed on discovery in criminal cases, obtain asymmetrical discovery, and otherwise risk prejudice to the Criminal Case. *Second*, there is no prejudice to the parties because the stay would be only in effect until the conclusion of the criminal case, which is moving expeditiously. *Third*, staying the Civil Action pending the conclusion of the Criminal Case is more efficient and preserves the Court's resources because many, if not all, of the issues presented by the Civil Action will be resolved in the Criminal Case.

## I.    THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, anyone may intervene as of right in an action when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant "is so situated that 'disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests. . . .'" Alternatively, Rule 24(b)(2) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact." The Government respectfully submits that its application satisfies both of these provisions, given the effect upon the Criminal Case this civil proceeding would have and the similarity of facts and claims between the parallel proceedings.

As a general rule, courts "have allowed the government to intervene in civil actions— especially when the government wishes to do so for the limited purpose of moving to stay discovery." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992);

*see also SEC v. Credit Bancorp.*, 297 F.3d 127, 130 (2d Cir. 2002). The Government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988).

Intervention is warranted because the Government's interest in upholding the public interest in enforcement of the criminal laws cannot be protected adequately by the existing parties in this civil litigation, neither of whom represents the Government's interests with respect to the investigation and enforcement of federal criminal statutes. *See Bureerong v. Uvawas,* 167 F.R.D. 83, 86 (C.D. Cal. 1996) ("[T]he Government's prosecutorial and investigative interest is not adequately protected by any of the civil parties . . . . Clearly neither the Plaintiffs nor the Defendants have this identical interest.").

## II.   A COMPLETE STAY IS APPROPRIATE.

### A.   Applicable Law

This Court has the inherent power to stay civil proceedings in the interests of justice pending the completion of a parallel criminal trial. *See Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action." (citations and internal quotation marks omitted)). "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In evaluating whether to grant such a stay, courts in this Circuit consider:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests

of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interest of the court; and (6) the public interest.

*Louis Vuitton*, 676 F.3d at 99. "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Volmar Distrib., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993). But the factors "can do no more than act as a rough guide for the district court as it exercises its discretion" and do not replace the Court's "studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Louis Vuitton*, 676 F.3d at 99. The Court's "decision ultimately requires and must rest upon a particularized inquiry into the circumstances of, and the competing interests in, the case." *Id.* (internal quotation marks omitted).

### B.    Discussion

Application of each of these factors here weighs in favor of the stay sought by the Government.

### 1.    *The Extent of the Overlap*

That the facts of the Civil Action overlap substantially with the Criminal Case and that similar issues will be decided in each case weigh heavily in favor of a stay. "The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues." *Volmar Distrib.*, 152 F.R.D. at 39 (citing Judge Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (S.D.N.Y. 1989)); *see also Parker v. Dawson*, No. 06 Civ. 6191 (JFB), 2007 WL 2462677, at *4 (E.D.N.Y. Aug. 27, 2007) (same); *United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("Where both civil and criminal

proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter.").

As described above, the facts of this case overlap almost entirely with the facts alleged in the Criminal Case. The two cases involve the same facts and witnesses, and raise many of the same issues, including whether the event contracts the defendant traded are a type of "swap" as defined by the Commodity Exchange Act, whether the defendant possessed material nonpublic information about Google's "Year in Search" results, whether the defendant misappropriated that material nonpublic information, and whether the defendant acted willfully. In short, the overlap between the cases is extensive, although it is important to note that perfect parity between the conduct is not required. *See SEC v. Tuzman*, No. 15 Civ. 7057 (AJN), Dkt. 43 at 2-3 (ordering a partial stay of discovery, over opposition, notwithstanding that some fraudulent conduct charged in the civil case was not referenced in the criminal indictment); *SEC v. Bauer*, 22 Civ. 3089 (RA), Dkt. 62 (ordering complete stay of discovery where the fraudulent conduct charged in the civil case included defendants not named as defendants in the criminal case and covered a broader set of stocks than the criminal indictment). That is not surprising given that, whether the CFTC case is broader than the Criminal Case or vice-versa, the issue relevant to whether a stay is appropriate is the same: whether it is likely that substantially the same set of facts would have to be proven twice in two different proceedings, draining resources from the courts and from the Government, and inconveniencing witnesses. *See, e.g.*, *SEC v. Shkreli*, 15 Civ. 7175 (KAM), 2016 WL 1122029, at *4 (E.D.N.Y. Mar. 22, 2016); *Tuzman*, No. 15 Civ. 7057 (AJN), Dkt. 43 at 3. Here, that is unambiguously the case.

In sum, this factor weighs heavily in favor of a stay. *See, e.g.*, *Shkreli*, 2016 WL 1122029, at *4; *Tuzman,* 15 Civ. 7057 (AJN), Dkt. 43 at 3.

### 2. *The Status of the Criminal Case*

The filing of the Indictment in the Criminal Case weighs in favor of a stay. "[T]he strongest argument for granting a stay is where a party is under criminal indictment." *Shkreli*, 2016 WL 1122029, at *5 (citation and internal quotation marks omitted). Indeed, "[t]he weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment." *In re Par Pharm, Inc. Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990); *see also Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al. v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) ("A stay of a civil case is most appropriate when a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved."). Thus, this factor also militates strongly in favor of a stay.

### 3. *The Potential Prejudice to the Parties*

No prejudice will result from the complete stay requested by the Government. The CFTC has informed the Government that it consents to this Motion. Therefore, there can be no argument that there would be prejudice to the plaintiff by staying the Civil Case. *See Shkreli*, 2016 WL 1122029, at *5 (citing cases). The defendant has indicated that he takes no position on this Motion, so there is no prejudice to him. Indeed, granting a stay of the Civil Case until the Criminal Case concludes would benefit the defendant because it allows him to avoid choosing between two unfavorable options: either suffering an adverse inference in the Civil Case by invoking his Fifth Amendment rights, or prejudicing his defense in the Criminal Case by waiving those rights and participating in civil discovery.

Moreover, the Government anticipates that the Criminal Case will proceed expeditiously, so any delay caused by a stay of the Civil Action will be minimal. The Government is in the process of producing discovery in the Criminal Case, and Judge Torres has set a motion schedule, with pretrial motions likely to be fully briefed by September 16, 2026. The parties have also both expressed a desire to proceed to trial as soon as practicable.

In sum, no party will suffer any unfair prejudice from a complete stay.

### 4.      *The Interests of the Court*

Considerations of judicial economy also weigh in favor of granting a stay. The many issues common to both cases can be resolved in the criminal proceeding, including the core legal arguments advanced by the defendant, thereby simplifying the civil action. *Cf. SEC v. Contorinis*, No. 09 Civ. 1043 (RJS), 2012 WL 512626, at *2 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding."); *Global Indus*., 2012 WL 5505738, at *4 ("[T]he Civil Case is likely to benefit to some extent from the Criminal Case no matter its outcome."); *LaBianca*, 801 F. Supp. at 1010-11 (recognizing judicial economy as a factor to be considered). Because the Criminal Case's outcome will likely affect the conduct, scope, and result of the civil proceeding, likely streamlining issues in this matter and avoiding duplication of effort and judicial resources, this factor favors the Government's application.

### 5.      *The Public Interest*

The Government and the public have an important interest in ensuring that civil discovery is not used to circumvent the well-founded restrictions that pertain to criminal discovery— restrictions that, *inter alia*, preserve the truth-seeking functions of the criminal process by

restraining the ability of criminal defendants to tailor testimony, suborn perjury, manufacture

evidence, or intimidate witnesses. *See United States v. Percevault*, 490 F.2d 126, 129 (2d Cir.

1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that

access to a witness' statements could be useful in impeaching a witness but was not intended to be

utilized in preparation for trial"); *United States v. McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968)

("The claimed need to see such statements in advance in order to prepare to rebut them is little

more than open notice of an intention to tailor testimony to fit the statement."); *S.E.C. v. Chirico*,

25 Civ. 6715 (ER), 2026 WL 972449, at *9 (S.D.N.Y. Apr. 10, 2026) (recognizing the "public's

interest in the effective enforcement of the criminal law," and "[p]rotecting that interest necessarily

includes ensuring that civil discovery is not used to circumvent the more limited discovery

available in criminal proceedings"); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008)

(the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence,

to protect potential witnesses from harassment and intimidation, and to level the playing field

between the government and the defendant, who would be shielded from certain discovery by the

Fifth Amendment").

  In *Tuzman*, Judge Nathan outlined three principal Government interests justifying a stay of

discovery of civil proceedings while parallel criminal proceedings are pending:

> First, broad disclosure of the essentials of the prosecution's case
> may lead to perjury and manufactured evidence. Second, revelation
> of the identity of prospective witnesses may create the opportunity
> for intimidation. Third, criminal defendants may unfairly surprise
> the prosecution at trial with information developed through [civil]
> discovery, while the self-incrimination privilege would effectively
> block any attempts by the Government to discover relevant evidence
> from the defendants.

*Tuzman*, No. 15 Civ. 7057 (AJN), Dkt. 43 at 3-4 (internal citations and quotations omitted). Based

on these concerns, judges in this District have frequently granted Government requests to limit

discovery in a parallel civil action in order to prevent the civil discovery rules from being subverted into a device for improperly obtaining discovery in the criminal proceeding. *See, e.g.*, *id.* (granting stay sought by Government); *SEC v. Beacon Hill Asset Management LLC*, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (granting government's motion to stay and noting, "[t]he principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases"); *Phillip Morris Inc. v. Heinrich*, No. 95 Civ. 328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (granting stay motion because if "civil discovery is not stayed, the criminal investigation will be prejudiced, as the Defendants may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules"); *Bd. of Governors of the Federal Reserve System v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("'A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal trial.'" (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1952))).

Indeed, the rationale underlying a stay is even stronger in a case where a defendant has been indicted, given that a defendant in a charged criminal case will likely invoke his Fifth Amendment rights in the civil case and not subject himself to the civil discovery process he may otherwise use affirmatively. *See, e.g.*, *SEC v. Calabrigo*, No. 22 Civ. 3096 (LJL), 2022 WL 4752427, at *5 (S.D.N.Y. Sept. 30, 2022) (discussing strategic use by a defendant of his Fifth Amendment right in civil proceedings); *Nicholas*, 569 F. Supp. 2d at 1070 (noting when granting full stay that "[t]he specter of parties and witnesses invoking their Fifth Amendment rights would render discovery largely one-sided; the SEC would produce scores of documents and witness

testimony only to be precluded from gathering reciprocal discovery from the defendants"). A denial of the Government's requested stay would therefore result in asymmetrical discovery in this case, pursuant to which the defendant would be able to obtain statements from relevant witnesses through depositions and use other discovery mechanisms, such as requests for admission and interrogatories, to obtain information from the CFTC, while the CFTC would be unable to use any of these discovery mechanisms to obtain information from the defendant because of his likely assertion of his Fifth Amendment rights. Such asymmetry is both unfair and a circumvention of the criminal discovery rules that govern when criminal defendants are entitled to obtain prior statements of the Government's trial witnesses. *See* 18 U.S.C. § 3500(b) (prior statements of Government witnesses must be made available after the witnesses have testified on direct examination).

Therefore, in order to avoid circumvention of the criminal discovery restrictions, including the provisions that are designed to prevent defendants from tailoring their testimony and obtaining asymmetrical discovery, and because the defendant will not in any way be prejudiced in preparing and defending himself, this factor weighs in favor of the Government's motion.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that its motion to intervene and to stay the case in its entirety be granted.

Dated: New York, New York
      July 29, 2026

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney

By:     /s/_____
Thomas S. Burnett
Ryan B. Finkel
Allison Nichols
Assistant United States Attorneys
26 Federal Plaza, 37th Floor
New York, New York 10278